IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JUDITH DOMARACKI, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Case No. |
| LOYOLA UNIVERSITY MEDICAL CENTER | ) |
| FEDERAL CREDIT UNION d/b/a LOYOLA | ) |
| UNIVERSITY EMPLOYEES FEDERAL CREDIT | ) |
| UNION, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

JUDITH DOMARACKI, by and through her attorneys, DANIEL G. AUSTIN, complains against defendant, LOYOLA UNIVERSITY MEDICAL CENTER FEDERAL CREDIT UNION, and alleges as follows:

NATURE OF ACTION

1. Plaintiff Judith Domaracki brings this civil action for violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §621 et. seq., as amended, by Defendant who intentionally discriminated against Judy Domaracki on the basis of age and retaliated against her for making her complaint against age discrimination by Defendant. Plaintiff further brings this action for violation of the Illinois Human Rights Act, 775 ILCS 5/2-102(A).

JURISDICTION AND VENUE

2. Jurisdiction is invoked pursuant to 28 U.S.C. §1343(a)(3) and (4) and 28 U.S.C. §1331 to secure protection and redress deprivation of rights secured by 29 U.S.C. §621 et. seq. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §2201 and 2202. This Court also has jurisdiction over the matter and the parties pursuant to 28 U.S.C. §1331.

3. Venue lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391(b)(1) and (2) because one or more parties reside within this judicial district and a substantial part of the events or omissions giving rise to the claim occurred herein.

ADMINISTRATIVE PROCEDURE

4. Plaintiff Judith Domaracki exhausted and fulfilled all conditions precedent to the institution of this lawsuit under the ADEA and IHRA. She timely filed charges of discrimination with the Equal Employment Opportunity Commission on October 19, 2016. On July 24, 2018 her amended charge of discrimination and retaliation was received by the EEOC. A right to Sue Letter was mailed by EEOC to Plaintiff on February 5, 2018.

5. JUDITH DOMARACKI is a seventy-two (72) year old resident of Elmwood Park, Illinois who has been employed with Defendant for twenty-five (25) years.

6. Defendant LOYOLA UNIVERSITY MEDICAL CENTER FEDERAL CREDIT UNION d/b/a LOYOLA UNIVERSITY EMPLOYEES FEDERAL CREDIT UNION ("Credit Union") is a financial institution that is a department of Loyola University, the employer of Plaintiff. Credit Union is an employer within the meaning of 29 U.S.C. §630(b). At all relevant times hereto, Credit Union with Loyola University has continuously employed and does now employ in excess of twenty (20) employees and affects interstate commerce.

7. On April 1, 2016, Judith Domaracki was stripped of her position as supervisor of the Credit Union and the corresponding responsibility over the Credit union staff and day to day operations and demoted to the position of lowest responsibility at the Credit Union, a Call Center Representative.

## COUNT I – AGE DISCRIMINATION - ADEA

8. Paragraphs one (1) through seven (7) are incorporated by reference as if fully set out herein.

9. In 1993, Plaintiff became an employee in the Credit Union department as Accounting Clerk II, under Harold Tram, Manager Credit Union. She excelled in her position, received regular merit increases, consistently performed beyond the standards of her job, and was promoted, in 1999 to Accounting Clerk III.

10. The following year, in 2000, Plaintiff was promoted to the exempt position of Supervisor Credit Union over the entire department and where she continued to excel and receive regular merit increases as she had since she started. She was replacing the prior supervisor who retired at age 65.

11. As Supervisor, Plaintiff became an exempt employee who was responsible for making day-to-day decisions at the Credit Union, was the only direct report to the Manager, and made regular reports to the Credit Union Board. Plaintiff enjoyed regular merit increases and corresponding reviews that reflected she performed beyond the standards expected of her as the department supervisor. In 2009, along with another merit increase, her job title was changed to Coordinator Credit Union maintaining the identical responsibilities as performed by her since 2000.

12. After Plaintiff celebrated her 69th birthday in early 2015 and she was making plans to endure her second hip surgery, she was repeatedly asked by her Manager if she had plans to retire soon. She thought the inquiries were odd to make in today's business world, but let them pass without incident.

13. Unbeknownst to Plaintiff, on or about September 2015, just days after Defendant had learned that Plaintiff would return from medical leave, Defendant secretly put in place its plan that would remove Plaintiff as the 70 year old supervisor at the Credit Union and replace her with a younger person, more than 10 years her junior, whom Plaintiff had trained to perform her role in her absence. Even while providing said training, Plaintiff was asked if she was thinking about retiring soon.

14. Within a month following her return to work in 2015, Plaintiff received her annual review and, for the first time since she became employed with the Credit Union in 1993, her review stated that she was not meeting expectations of her position.

15. During this annual review, she was again asked if she had plans to retire soon.

16. Plaintiff questioned her Manager concerning his review and the assertions contained therein including, among others, that she had not participated in Credit Union planning that took place while she was on leave, that she had not checked in during her approved leave of absence, and that the membership had not increased 5% during the year she took her age related second absence. Plaintiff did not think to ask him why he continued to inquire as to her retirement plans.

17. On information and belief, at the time Plaintiff received this first negative review, she was the highest paid staff person at the Credit Union and possessed the most seniority and paid leave time available to use during each year.

18. On or about the February 2016, Defendant disclosed to Plaintiff and the rest of the Credit Union staff that there was a reorganization plan "for the future of the Credit Union" and provided everyone information about the plan.

19. Per the plan, the existing staff of six was being reorganized into five positions. All employees were told they may apply for any position. However, there was a seventh position also included with the reorganization, Loan Officer, for which Howard Hayes, Director of the Credit Union, told the staff not to apply, as it would be going to an outside person.

20. Unbeknownst to Plaintiff, the Credit Union through its Board and Harold Tram had already decided which employee would receive each respective reorganized position.

21. Plaintiff applied for all of the positions that were made available to her.

22. In March 2016, Harold Tram disclosed who was selected to fill each of the reorganized positions and that the positions would start at a future date.

23. Plaintiff was not selected for any position "for the future of the Credit Union."

24. When Plaintiff asked what position she would receive, she was met with no response.

25. For nearly a full month, no answer was provided to Plaintiff's question by Defendant with hope that she would simply retire from her role as supervisor as the last supervisor had done after she reached age 65.

26. The Credit Union did not want someone who was over 70 years of age, had two hip surgeries and was entitled to extended vacation each year in the role of supervisor.

27. Then on April 1, 2016, another reorganization position was suddenly disclosed and immediately offered to Plaintiff without interview, an entry level position with Credit Union of Call Center Representative.

28. Rather than retire as the Credit Union had hoped would result when it offered this demotion, Plaintiff inquired as to its duties and responsibilities and requested training. Again,

neither the Human Resources department nor the Credit Union could provide her any answer, and she was made to wait again.

29. Fifteen days later, the salaries of the positions were posted for everyone to review. Every reorganized position had resulted in a raise, except for Plaintiff's demoted position that reduced her annual salary by more than $10,000.00.

30. The following week, Plaintiff was told by her Manager, Harold Tram, that she would not be paid because she had not punched in on the time-clock. She still had neither been provided a job description nor told that demoted position was non-exempt and required to use a time clock.

31. Shortly thereafter, Plaintiff was provided a job description that reflected her role would be that of an entry-level Credit Union person with zero experience who would greet patrons, answer phones, and provide data entry support.

32. When Plaintiff requested the Manager to explain her duties and responsibilities, he responded that he "couldn't" and that he "didn't know what to do with [Plaintiff]". Moreover, no training for the demoted position was provided with the reorganized.

33. Defendant thereafter refused upon request to pay out her accrued vacation time at her supervisory rate and would only pay at the new reduced rate.

34. For nearly a full month, Plaintiff was expected to continue to perform the majority of her former supervisor duties as well as those of the call center representative. While she performed both jobs, she was only paid for one.

35. Contrary to the stated RIF procedure of Defendant, Plaintiff also was not paid the required severance package upon termination of her supervisor employment and re-hire to the demoted position.

36. Plaintiff was subjected to purposeful discrimination while holding the title of Coordinator on the basis of her age, 70 (seventy), in violation of the ADEA, as amended, 29 U.S.C. §621 et. seq.

37. As a direct and proximate result of the above alleged willful and reckless acts and/or omissions of Defendant, Plaintiff has suffered damages, including but not limited to lost and foregone wages and benefits.

WHEREFORE Plaintiff JUDITH DOMARACKI prays for judgment against Defendant and respectfully requests that this Court:

A. Declare the conduct of Defendant to be a violation of the rights guaranteed to the Plaintiff pursuant to appropriate federal law:

B. Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them from engaging in any employment practice that unlawfully discriminated on the basis of age;

C. Order that Defendant make JUDITH DOMARACKI whole by providing the affirmative relief necessary to eradicate the effects of the Defendant's unlawful practices;

D. Order Defendant to pay lost, forgone and future wages to JUDITH DOMARACKI

E. Grant the Plaintiff consequential, compensatory, liquidated and any other damages that the Court may deem appropriate;

F. Grant the Plaintiff an award of her attorney fees, costs and disbursements, and,

G. Grant such other relief as is just and proper.

**COUNT II – RETALIATION**

38. Paragraphs eight (8) through thirty-seven (37) are incorporated by reference as if fully set out herein.

39. Without explanation of job duties, training or a designated supervisor for the demoted position, Plaintiff nevertheless continued to show up every morning, opening the office at 6:30 as she had for nearly 18 years and remaining available for both customers and fellow employees alike until the end of her workday.

40. After performing the demoted position without definition for 90 days, Plaintiff came to the realization that her demotion was the result of age discrimination and complained to Human Resources on July 11, 2016 as required by Defendant's policy listing her Manager and the Board of Directors as the persons who perpetrated the discrimination.

41. Defendant nonetheless forced Plaintiff to sit and answer questions from her harasser as its investigatory process.

42. Not surprisingly, Defendant's tarnished and biased investigation lead by the perpetrator of the plan to remove Plaintiff as its 70 year old supervisor did not find the existence of age discrimination. No means to appeal the findings of the investigation was provided to Plaintiff.

43. Shortly thereafter, Plaintiff filed her EEOC complaint, and retaliation against Plaintiff began.

44. The employee whom Plaintiff had trained years ago was told that Plaintiff had filed with the EEOC and suggested that Plaintiff was trying to take away her new position.

45. Plaintiff's known opposition to and complaint against workplace discrimination constituted protected conduct.

8

46. Plaintiff was then assigned, yet another new position that was not previously offered to her and told she would have 90 days to complete training.

47. Plaintiff was expected to continue to perform the duties of the Call Center Rep position at the same time she completed the training for the new position and continued to provide direction to the younger employees when asked as to how to perform certain supervisory functions.

48. No other employee was expected to perform multiple positions.

49. No other employee was made to perform the tasks and functions that Plaintiff was not required while answering phones and greeting and problem solving for patrons as they requested assistance of the Credit Union.

50. Approximately six months following her EEOC complaint, a new round of training was assigned to Plaintiff to complete, still while performing all the other duties with constant interruption that no other employee was made to endure.

51. The level of scrutiny then placed upon Plaintiff was unprecedented.

52. A new extensive examination of proficiency without benchmark in each daily task ensued.

53. Every question asked by Plaintiff during the second training was logged and any such inquiry must be made exclusively of Plaintiff's former protégé or trainer regardless of the fact that others knew and also performed the entry procedures that Plaintiff was now performing.

54. This scrutiny was placed on the backup aspect of Complainant's new position and not the primary assigned duties of the position.

55. Plaintiff was then purposefully reprimanded in front of the other staff and Credit Union patrons if any errors were made during this new training.

56. Shortly thereafter, Plaintiff learned that since April of 2016, even though she was no longer exempt, she was not being paid overtime for her hours as a direct result of actions taken by Harold Tram and the payroll designation made by him of Plaintiff.

57. As a result of this entire ordeal, the employees with whom Plaintiff has worked and socialized for years no longer interact with her.

58. The hostile retaliatory work environment created following her complaint to Human Resources and EEOC continues the act of discrimination and retaliation that started with the reorganization plan.

59. The foregoing acts of Defendant retaliated against Plaintiff and were in violation 29 U.S.C. §623a.

60. The foregoing acts had the purpose and/or effect of retaliating against Plaintiff for making her complaints about age discrimination.

61. The foregoing acts of Defendant were deliberate, intentional, willful, wanton and malicious and in reckless disregard of Plaintiff's civil rights.

WHEREFORE Plaintiff JUDITH DOMARACKI prays for judgment against Defendant and respectfully requests that this Court:

A. Declare the conduct of Defendant to be a violation of the rights guaranteed to the Plaintiff pursuant to appropriate federal law:

B. Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them from engaging in any employment practice that unlawfully discriminated on the basis of age;

C. Order that Defendant make JUDITH DOMARACKI whole by providing the affirmative relief necessary to eradicate the effects of the Defendant's unlawful practices;

D. Order Defendant to pay lost, forgone and future wages to JUDITH DOMARACKI

E. Grant the Plaintiff consequential, compensatory, liquidated and any other damages that the Court may deem appropriate;

F. Grant the Plaintiff an award of her attorney fees, costs and disbursements, and,

G. Grant such other relief as is just and proper.

### COUNT III – AGE DISCRIMINATION - IHRA

62. Paragraphs eight (8) through thirty-five (35) are incorporated by reference as if fully set out herein.

63. Defendant is an employer as defined by IHRA, 775 ILCS 5/2-101(B)(1)(a). At all relevant times hereto, Credit Union with Loyola University has continuously employed and does now employ in excess of fifteen (15) employees.

64. Plaintiff was subjected to purposeful discrimination while holding the title of Coordinator on the basis of her age, 70 (seventy), in violation of the IHRA.

65. As a direct and proximate result of the above alleged willful and reckless acts and/or omissions of Defendant, Plaintiff has suffered damages, including but not limited to lost and foregone wages and benefits, pain and suffering, and humiliation and embarrassment.

WHEREFORE Plaintiff JUDITH DOMARACKI prays for judgment against Defendant and respectfully requests that this Court:

A. Declare the conduct of Defendant to be a violation of the rights guaranteed to the Plaintiff pursuant to Illinois law:

B. Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them from engaging in any employment practice that unlawfully discriminated on the basis of age;

C. Order that Defendant make JUDITH DOMARACKI whole by providing the affirmative relief necessary to eradicate the effects of the Defendant's unlawful practices;

D. Order Defendant to pay lost, forgone and future wages to JUDITH DOMARACKI

E. Grant the Plaintiff consequential, compensatory and any other damages that the Court may deem appropriate;

F. Grant the Plaintiff an award of her attorney fees, costs and disbursements, and,

G. Grant such other relief as is just and proper.


Respectfully submitted,

**JUDITH DOMARACKI**


By:    /s/ Daniel G. Austin
        One of her Attorneys

### RULE 38 JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure Plaintiff Judith Domaracki demands trial.

Daniel G. Austin
AUSTIN LAW GROUP, LLC
15 Salt Creek Lane
Suite 321
Hinsdale, Illinois 60521
P: (312) 829-2300
austinlawgroup@outlook.com